[No. 17603-0-I. Division One. June 8, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. MARVIN
STANDIFER, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Cindy K. Smith* and *Dean Scott Lum, Deputies,* for appellant.

*Scott A. Reiman, Public Defender,* for respondent.

WILLIAMS, J.—Marvin Standifer was found guilty by a jury of second degree theft. After the verdict was returned, Standifer filed motion for arrest of judgment. The trial court granted the motion and dismissed the cause. The State appeals; we reverse.

On September 27, 1984, Marvin Standifer stole Michelle Morell's Rainier Bank Machine card, using it without her permission on numerous occasions to obtain money from her account with the Rainier Bank. Standifer was arrested and charged by information with one count of second degree theft.

According to former RCW 9A.56.040(1)(c), a person is guilty of second degree theft if he commits theft of a "credit card". The question before the court is whether a

bank card qualifies as a credit card for purposes of this statute. Former RCW 9A.56.010(3) provides the following definition:

"Credit card" means any instrument or device, whether incomplete, revoked, or expired, whether known as a credit card, credit plate, charge plate, courtesy card, or by any other name, issued with or without fee for the use of the cardholder in obtaining money, goods, services, or anything else of value, including satisfaction of a debt or the payment of a check drawn by a cardholder, either on credit or in consideration of an undertaking or guarantee by the issuer;

Generally speaking, a bank card is a device issued by a bank which allows an account holder to receive a number of banking services through automated teller machines (ATM's). ATM's are essentially remote computer terminals which communicate with the bank's mainframe computer. Cardholders gain access to the machines by inserting their card and entering a personal identification number (PIN). The ATM reads a magnetic strip on the card and verifies the PIN. If the card is accepted and the desired transactions are authorized, the holder may typically use the ATM to withdraw cash, make deposits, transfer funds or make balance inquiries. ATM's may be maintained by the issuing bank itself or a third party. No matter who provides the machine, the issuing bank promises to perform the requested transactions.

Given their nature and function, bank cards fit squarely within the statutory definition in former RCW 9A.56.010(3). A bank card is an instrument or device issued for the use of a cardholder in obtaining money or services in consideration of an undertaking by the issuer. Had the Legislature intended to limit the definition to traditional "credit" cards, it would not have included the disjunctive phrase "either on credit or in consideration of an undertaking . . ." Compare 15 U.S.C. § 1602(k) (defining "credit card" as "for the purpose of obtaining money, property, labor, or services on credit") and 15 U.S.C. § 1693a(1) (defining "accepted card" in the context of electronic fund

transfers as "for the purpose of transferring money between accounts or obtaining money, property, labor, or services").

The card defined by former RCW 9A.56.010(3) unambiguously covers cards with which money can be obtained on credit, as well as cards which allow for the withdrawal of money from an established account.[1] The "undertaking" by the bank to pay money from an account on demand, putting it in the position of a debtor, is of the same character as its "undertaking" to supply money on credit.

Reversed and remanded for entry of judgment.

SWANSON and GROSSE, JJ., concur.

Reconsideration denied July 29, 1987.

Review granted by Supreme Court November 3, 1987.

---

[1]We note the court in *State v. White*, 47 Wn. App. 370, 372, 735 P.2d 684 (1987) has concluded that the credit card definition of former RCW 9A.56.010(3), when used in conjunction with former RCW 9A.60.010(1)(b) and RCW 9A.60-.020(1)(b) to charge forgery, is ambiguous.