IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38000-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN M. PAFFHAUSEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — A defendant generally cannot appeal a sentence within the standard range. RCW 9.94A.585(1). An exception exists if the sentencing court failed to comply with statutory or constitutional requirements. *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006). After receiving a low-end standard range sentence for three counts of child molestation rather than the special sex offender sentencing alternative (SSOSA) he was seeking, Justin Paffhausen appeals, claiming procedural errors. But none of his representations of procedural error is borne out by the record. His sentence is affirmed.

FACTS AND PROCEDURAL BACKGROUND

The daughter of Justin Paffhausen's girlfriend told her mother in late January 2019 that Paffhausen, with whom she, her mother and her baby brother were then living, had masturbated in front of her and made her watch pornography. The mother and the two children moved out of the shared home the next day. The mother reported the alleged abuse to Child Protective Services.

The eight-year-old victim, who we will refer to pseudonymously as Ainsley,[1] participated in a forensic interview a couple of weeks later. She told the interviewer that Paffhausen, whom she sometimes referred to as her "'step-dad,'" showed her pictures of naked boys and girls on his cell phone and taught her that sex was when boys put their privates inside of girls. He showed her videos of boys and girls having sex at least four separate times and encouraged Ainsley to touch her privates while they watched them because "'it feels good.'" Clerk's Papers (CP) at 68. When she did not want to, he told her he would do it. Ainsley told the interviewer that Paffhausen had pulled her pajamas and underwear down and rubbed his fingers between her legs two separate times. She said he would also pull his pants down, place her hand on his privates and make her hand go up and down until his privates would "'spit like the clearish whitesh.'" *Id*. She said that had been happening since she was six years old.

---

[1] General Orders of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov /appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

Paffhausen was charged with three counts of child molestation in the first degree, one count of sexual exploitation of a minor, and one count of communication with a minor for immoral purposes.

Paffhausen had suffered sexual abuse as a child himself, beginning at age nine, and admitted to many but not all of Ainsley's allegations. In October 2019, Paffhausen underwent a psychosexual evaluation by a certified sex offender treatment provider, hoping it would establish his amenability to treatment and eligibility for a SSOSA. After additional interviews and testing, the provider completed an evaluation in which she found Paffhausen to be low risk to reoffend and recommended that he receive the sentencing alternative.

It was eventually agreed between the State and Paffhausen that in exchange for Paffhausen's plea of guilty to the three child molestation counts, the State would dismiss the remaining two charges. With that amendment, Paffhausen would be eligible for a SSOSA. Although the Department of Corrections' presentence investigation report supported a recommendation of SSOSA with the statutory maximum of one year of incarceration, the State made it clear it would oppose Paffhausen's request for the sentencing alternative.

Paffhausen proceeded to sentencing in December 2020. The State told the court it was "adamantly opposed" to Paffhausen's request for a SSOSA and asked the court to set Paffhausen's minimum sentence at the high end of the standard range, which was 130

months.  Report of Proceedings (RP) at 4.  Paffhausen requested a SSOSA, and asked

that he serve no confinement.  After hearing from the State, from Ainsley's mother, and

from Paffhausen and his lawyer, the sentencing court denied the request for the SSOSA

and imposed an indeterminate sentence with a minimum of 98 months' confinement, the

low end of the standard range.

Paffhausen appeals.

ANALYSIS

We repeat what we said at the outset: A defendant generally cannot appeal a

sentence within the standard range.  RCW 9.94A.585(1).  An exception exists if the

sentencing court failed to comply with statutory or constitutional requirements.  *Osman*,

157 Wn.2d at 481-82.  The grant of a SSOSA is entirely at a trial court's discretion, so

long as the court does not abuse its discretion by denying the sentencing alternative on an

impermissible basis.  *State v. Sims*, 171 Wn.2d 436, 445, 256 P.3d 285 (2011) (citing

*Osman*, 157 Wn.2d at 482 n.8).  "'[C]ourts have only specified the defendant's race, sex,

or religion as impermissible bases for a court's denial of a nonstandard sentence.'"
*See id*. (quoting  *Osman*, 157 Wn.2d at 482 n.8).

Paffhausen casts his appeal as one to correct statutory or procedural error.  But the

record does not support his challenges.

Paffhausen sets forth the matters that RCW 9.94A.670(4) requires the court to

consider in deciding whether to impose a SSOSA, implying that they were not considered

by the sentencing court.[2]  Yet in announcing its sentence, the court began by saying it "ha[d] in mind specifically RCW 9.94A.670" and had "reviewed that statute carefully." RP at 29.  It discussed the purposes of the Sentencing Reform Act of 1981, chapter 9.94A RCW, in general and the SSOSA considerations in particular.  *See* RP at 29-31.

Paffhausen characterizes the court's announcement of its sentencing decision as marked by "unfounded reliance on assumptions and facts contrary to the record," Br. of Appellant at 17, yet there is support in the record for court observations that he challenges.  He challenges the sentencing court's reliance on harm to Ainsley, arguing that there is "no record of any formal finding of long term injury to the victim in the record other than counseling." *Id.* at 16.  A sentencing court is legitimately concerned with more than "formal" findings of "long-term" harm.  Ainsley's mother spoke about her young daughter's depression and self-hate.  The prosecutor noted that Ainsley had reacted to the abuse by acting out, and lost pleasure in the things she used to enjoy doing.

---

[2] RCW 9.94A.670(4) provides that if an offender is eligible for the sentencing alternative, the court, after receiving any reports evaluating the offender's amenability to treatment, shall consider:

> whether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section.

The prosecutor made the common-sense observation that Ainsley would never forget what happened to her and it could foreseeably impact her intimate relationships for life.

Paffhausen asserts that he never lied or misled anyone in the course of the investigation. But one of the State's principal arguments against the SSOSA was that he *had* minimized his conduct, denying during his presentence investigation that he ever touched Ainsley and taking the position that she was the initiator of much that happened.

Paffhausen argues that for the court to accept the plea agreement that made him SSOSA-eligible and then deny a SSOSA for a crime it characterized as "horrendous" was "disingenuous" and an abuse of discretion. *Id.* at 15-16. But the State was consistently clear that it would oppose a SSOSA. The court's action could not be "disingenuous" since, as Paffhausen's statement on plea of guilty acknowledged, acceptance of the plea did not bind the sentencing judge to anyone's recommendation.

He asserts that a medical examination did not suggest any sexual abuse of Ainsley. *Id.* at 16. But there is nothing in the record to suggest that Ainsley underwent a medical examination, given the nature of her allegations. Paffhausen's citation is to the results of a medical examination of his and his girlfriend's eight-month-old son, which was performed out of caution.

Most glaringly, Paffhausen argues that the sentencing court failed to heed the wishes of Ainsley's mother and suggests the mother might not even have attended the sentencing. *Id.* at 14-17. She did attend. She told the court that she had not originally

opposed a SSOSA sentence, as long as Paffhausen would serve at least a year of confinement. But when she learned he would be asking for no prison time, she changed her position. She told the court, "I'm set on wanting him not to receive the SSOSA program and to receive only prison time." RP at 5. Yet Paffhausen misrepresents in his briefing that Ainsley's mother, "told the court specifically '. . . I'm set on *wanting him to receive the SSOSA program* and to receive only prison time.'" Br. of Appellant at 14 (emphasis added) (alteration in original).

In announcing its sentence, the court observed that Paffhausen was eligible for a SSOSA and that he had been severely abused as a child. But it expressed concern about Paffhausen's grooming behavior and the fact that he admitted to watching stepfather/stepdaughter pornography during the period of the abuse. It agreed that Paffhausen had minimized his conduct in the presentence interview, and was "great[ly] concern[ed]" about his characterization of Ainsley as an initiator, given, as the court said, "this victim is not capable of expressing viable interest or initiation." RP at 32. It took into consideration the victim's mother's wishes and its own conclusion that to impose the sentencing alternative, even with a year of incarceration, "would be too lenient in light of the extent and circumstances of the offense." RP at 33. It did impose a minimum term of 98 months rather than the 130 months being requested by the State, explaining it was doing so because Paffhausen had taken some responsibility for his actions.

The sentencing court was not bound by the recommendations of the psychosexual examination or the presentence investigator. *See State v. Hays*, 55 Wn. App. 13, 17, 776 P.2d 718 (1989) (sentencing court considering a defendant's request for a SSOSA is not bound by an expert's opinion) (citing *State v. Toomey*, 38 Wn. App. 831, 837, 690 P.2d 1175 (1984)), *cert. denied*, 471 U.S. 1067, 105 S. Ct. 2145, 85 L. Ed. 2d 501 (1985).  No statutory or procedural error is shown.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Staab, J.

_____
Fearing, J.